THE UNION SAVINGS ASSOCIATION v. THE ST. LOUIS GRAIN ELEVATOR COMPANY, *Appellant.*

Warehouse Receipts: STATUTE. A negotiable warehouse receipt, within the meaning of Revised Statutes of 1879, chapter 11, is one given for goods stored or deposited. An instrument which imports no obligation to hold the grain in store, but is, in effect, an agreement to ship it, is not a warehouse receipt within the meaning of the Statute.

*Appeal from St. Louis Court of Appeals.*

REVERSED.

*Broadhead & Haeussler* for appellant.

The paper offered in evidence, and which is the basis of plaintiff's claim of title to the property in question, is not a warehouse receipt within the meaning of our statute on the subject. R. S., §§ 558, 559; *State v. Miller*, 45 Mo. 499; *Farmer v. Gregory*, 78 Ky. 475; Byles on Bills, p. 95; *Nat. B'k v. Gay*, 63 Mo. 33. The paper on its face conveyed to plaintiff clear notice of its *ad interim* function. *Van Schoonhaven v. Curly*, 86 N. Y. 187. Plaintiff held the paper subject to all existing and prior equities. *Kellogg v. Schnaake*, 56 Mo. 136; *Davis v. Carson*, 69 Mo. 610; *Logan v. Smith*, 62 Mo. 458; *Brainerd v. Reaves*, 2 Mo. App. 493. The plaintiff cannot recover in this action from defendant the value of the property mentioned in the paper sued on, as it unquestionably appears from the evidence that the plaintiff theretofore received the full value and

Union Savings Association v. St. Louis Grain Elevator Company.

proceeds of the identical property under the bill of lading issued for said property to Stein & Co., and delivered to plaintiff in pursuance of the obligation of defendant expressed in the paper sued upon. *Bank v. Boyce*, 78 Ky. 42; *Nelson v. Brown*, 53 Ia. 555; *Harris v. Bradley*, 2 Dill. 284; *Bank v. Waldridge*, 19 Ohio St. 419; *State v. Fitzpatrick* 64 Mo. 185; *Williams v. Evans*, 39 Mo. 205.

*Charles A. Pearce* for respondent.

The theory of the plaintiff in this cause is: 1. That the receipt offered in evidence is negotiable by written indorsement and delivery, in the same manner as bills of exchange and promissory notes, and on delivery so indorsed the transferee is vested with the title of the property. Secs. 558, 559, R. S. 1879, p. 88; *Central Savings Bank v. Garrison*, 2 Mo. App. 58; *Harris v. Bradley*, 2 Dill. 284; *Price v. Ins. Co.*, 43 Wis. 281 *et seq.* And the negotiation of the receipt by Stein & Co. cut off the defenses which defendant might have had against the bailors, and made the plaintiff subject only to the facts stated in the receipt. *Greenbaum v. Megibbon*, 10 Bush (Ky.) 419; *First National Bank v. Boyce*, 10 Law Jour. 238. 2. That the defendant was prohibited by statute from issuing any receipt or other voucher to any person purporting to be the owner, etc., thereof, for any goods, merchandise or grain, unless the same shall have been actually received into store or upon defendant's premises, and be in the store or upon its premises and under its control at the time of issuing such receipt, and that, therefore, defendant is estopped from showing, or attempting to show, that said grain was not actually received. St. Mo., p. 87, § 553; *McNeil v. Hill*, Wool. C. C. R. 96; *Griswold v. Haven*, 25 N. Y. 596; *Goodwin v. Scannell*, 6 Cal. 541. 3. That the defendant was prohibited by statute from issuing any second receipt for said grain while a former receipt was outstanding and uncanceled without writing across the face of the same "duplicate," and the issuing of a second

receipt is no defense to this action, but contrary-wise, is a violation of the law, rendering defendant liable. St. Mo., p. 87, § 555. 4. That no matter whether said grain was received from Stein & Co. for storing, shipping, grinding, manufacturing or other purpose, the defendant was prohibited by statute from shipping, transferring or in any manner removing said grain, and from permitting it to be shipped, transferred or removed beyond its, defendant's, control, (the receipt for the same herein sued on having been given,) without the written assent of the plaintiff holding said receipt; and *prima facie*, the receipt issued and herein concerned, was one for storage. St. Mo., p. 87, § 356; *Gibson v. Stevens*, 8 How. 384; *Cochran v. Rippey*, 6 Law Jour. 88. 5. That no printed or written conditions, clauses or provisions inserted in or attached to said receipt, herein concerned, in any way limits the negotiability, or affects the negotiation thereof or in any manner impairs the rights and duties of the parties thereto, or persons interested therein, and every such condition, clause or provision purporting to limit or affect the rights, duties or liabilities created or declared "in this act," are void and of no effect. St. Mo., p. 88, § 558. 6. That this receipt being issued to Stein & Co., and by them indorsed and delivered for value to plaintiff, the plaintiff became, by operation of law, the owner of said grain, and defendant was prohibited from delivering it to any person whomsoever, except on the surrender and cancellation of said receipt. St. Mo., p. 88, § 559. 7. That the defendant having violated these provisions of the statute, is thereby rendered liable to plaintiff in all damages, immediate and consequential, which plaintiff has suffered by reason of such violation, and the court erred in excluding testimony on the subject of consequential damages. St. Mo., p. 89, §560.

HENRY, J.—Prior to the 31st of January, 1880, Stein & Co. had stored with defendant 5,921 45-56 bushels of No. 2 white-mixed corn, and on that day they delivered to de-

fendant its warehouse receipts for the same and received instead the following paper:

"St. Louis, January 31st, 1880.

Received of G. A. Stein & Co. five thousand nine hundred and twenty-one 45-56 bushels of No. 2 white-mixed corn, to be loaded into sacks, tickets for which when loaded, will be sent down promptly.

D. P. Slattery,
Superintendent and Secretary.
Per Owen.

5,921 45-56 bushels."

On this as collateral security, Stein & Co. procured a loan of $3,400 from plaintiff, which, on the 30th of June, and again on the 1st of July, 1880, made ineffectual demands of the corn of defendant, and thereupon commenced this action. If the paper sued on is a warehouse receipt, within the meaning of sections 558 and 559 of the Revised Statutes, the judgment of the court of appeals must be affirmed, otherwise reversed. Those sections read as follows:

All receipts issued or given by any warehouseman, or other person or firm, and all bills of lading, transportation receipts, and contracts of affreightment, issued or given by any person, boat, railroad or transportation or transfer company, for goods, wares, merchandise, grain, flour, or other produce, shall be and are, hereby made negotiable by written indorsement thereon, and delivery in the same manner as bills of exchange and promissory notes; and no printed or written conditions, clauses or provisions inserted in or attached to any such receipts, bills of lading, or contracts, shall in any way limit the negotiability or affect any negotiation thereof, nor in any manner impair the right and duties of the parties thereto, or persons interested therein; and every such condition, clause or provision purporting to limit or affect the rights, duties, or liabilities created or declared in this act, shall be void, and of no force or effect. 1. R. S. § 558.

Warehouse receipts given by any warehouseman, wharfinger, or other person or firm, for any goods, wares, merchandise, grain, flour, or other produce or commodity, stored or deposited, and all bills of lading and transportation receipts of every kind, given by any carrier, boat, vessel, railroad, transportation or transfer company, may be transferred by indorsement in writing thereon, and the delivery thereof so indorsed; and any and all persons to whom the same may be so transferred, shall be deemed and held to be the owner of such goods, wares, merchandise, grain, flour or other produce or commodity, so far as to give validity to any pledge, lien or transfer, given, made or created thereby, as on the faith thereof, and no property so stored or deposited, as specified in such bills of lading or receipts, shall be delivered, except on surrender and cancelation of such receipts and bills of lading, provided, however, that all such receipts and bills of lading, which shall have the words "not negotiable" plainly written or stamped on the face thereof, shall be exempt from the provisions of this act. 1 R. S., § 559.

It appears from the evidence, that the paper in question was not in the form of receipts given by defendant for produce stored with it. Such receipts were in the following form:

"No. 2,276; 5,000 bushels. St. Louis Grain Elevator Company, St. Louis, Mo., January 26th, 1880. Received in store from bulk 5,000 bushels of corn, inspected No. 2 white-mixed, subject only to the order hereon of Nanson, Bartholow & Co., and the surrender of the receipts and payment of charges.

J. JACKSON, President.

D. P. SLATTERY, Secretary.

Indorsed: NANSON, BARTHOLOW & Co."

The difference between this receipt and that in suit, is material and significant. The effect of section 558, *supra*, is to make warehouse receipts negotiable. To understand what are such receipts as are made negotiable, sections 558

and 559 are to be read together. Section 559 provides how receipts made negotiable by section 558 may be transferred, and the effect to be given to such transfers, and provides that "warehouse receipts given by any warehouseman    *    *    for any goods    *    *    grain    *    *    stored or deposited    *    *    may be transferred by indorsement in writing thereon, and the delivery thereof so indorsed."

A negotiable warehouse receipt, therefore, is one given for goods stored or deposited. The paper in suit is not such a receipt. It imports no obligation to hold the grain in store, but is in effect, an agreement to ship corn, as the evidence shows, then in store. On its face it gave notice that it was not a receipt for corn to be held in store, but a memorandum showing that the corn was to be shipped by defendants for the owner. If it had expressly contained the stipulations, fairly inferable from its terms, that defendant had received of Stein & Co. the corn mentioned, which defendant was, at its earliest opportunity, to load into sacks, tickets for which, when shipped, were to be sent to Stein & Co., would it be contended that any one could have purchased that paper, held it for months and after defendant in compliance with its terms had shipped all the corn, sued defendant and maintained this action? Respondent's counsel contends that the defendant was prohibited by section 553, R. S., from issuing any receipt or voucher to any person, purporting to be the owner, for any goods unless the same shall have been actually received into store or upon defendant's premises, and be there at the time of issuing the receipt, and is, therefore, estopped from showing that said grain was not actually received. No attempt was made to show that the corn was not in defendant's possession when the paper sued on was issued. It was in store but not to be kept in store for the owner, but, by the terms of the paper, to be shipped. No one taking it by indorsement could have supposed that the corn was to remain in store for a longer time than it would take to sack and ship it.

The object of section 553 was to prevent the issuance of a receipt to one who had no property in store, thus giving him a fictitious credit. There was nothing in the transaction under consideration violative of that section or against its policy.

When Stein & Co. delivered to defendant the warehouse receipt, in order to move the corn, they were entitled to some evidence that they owned it, and a paper, such as that given them, was as little as they could ask. Under respondent's view, and that taken by the court of appeals, Stein & Co., after delivering up the warehouse receipt, had no right to any receipt or memorandum, showing that they were the owners of the corn still in the possession of the elevator company, and, therefore, by legal compulsion, must place themselves at the mercy of the latter. Sections 555 and 556 are relied upon to show that no matter for what purpose the corn was received, defendant was prohibited from shipping or placing it beyond its control without the written assent of the holder of the receipt. Section 555 prohibits the issuance by warehousemen of a second receipt for goods while a former one for the same, or any part of the goods, shall be outstanding. No receipt was outstanding when the receipt, or paper, in suit was issued.

Section 556 prohibits warehousemen from selling, shipping, * * any goods * * for which a receipt shall have been given by him, whether received for storing, shipping, * * or other purpose, without the written assent of the person holding such receipt.

The reason why goods received for shipment, such purpose being expressed on the face of the receipt given for them, may not be shipped, without the written assent of the holder of such receipt, is not perceived, if the section be construed to require such written assent of the original holder of the receipt, who has never parted with it. If, however, we are right in the position that the paper in suit is not a negotiable warehouse receipt, then no holder of such receipt can invoke this section of the statute, unless

he has given notice to the warehouseman, before the shipment of the grain, that he was the owner.   If such receipts pass by indorsement and delivery, and are held to be negotiable warehouse receipts, the warehouseman might have the written assent of the holder to-day, and to-morrow would have to ascertain whether he was still the holder; if not, ascertain who is, and from such holder also get a written assent to ship the goods.   Such a construction would make nonsense of the section and fill the elevators with produce to remain in them until the elevator company could find the owner of the receipt and hold him fast, after getting his written assent, until the shipment had been effected, otherwise the company could never venture to ship the goods.

The paper in question was, under the evidence, neither a receipt for goods to be stored nor shipped.   The corn had been received for storage, and a receipt to that effect given, had been delivered up, and the defendant ordered to ship the corn, and the paper was but a memorandum showing how the corn, on the delivery of the warehouse receipt, was delivered to the owner, section 559 providing that "no property, so stored or deposited, as specified in such    *    *    receipt, shall be delivered, except on surrender and cancellation of such receipts.   On its face it purported to be a receipt for corn to be shipped, and not being a negotiable warehouse receipt, it was competent for defendant, as against an assignee who had given no notice of his claim, to show a shipment of the corn.

I find nothing in the cases cited by the court of appeals, and in brief of counsel, in conflict with the foregoing views.   *Harris v. Bradley*, 2 Dill. C. C. R. 284, is cited for the proposition that nothing in the statute requires that instruments embraced by it should be of any particular form.   This is not controverted; but we hold that, while no particular form is prescribed for a warehouse receipt, it must be for goods stored, and that when such is not the character of the instrument, but, on its face it gives notice

of the manner in, and the purpose for which the goods are held, and such holding is inconsistent with an obligation to keep them in the possession and under the control of the warehouseman, it is not a warehouse receipt within the meaning of sections 558 and 559. The case of *McCabe v. McKinstry*, 5 Dill. C. C. R. 511, 517, is relied upon to show that *prima facie* the paper in question is a receipt for storage. There the receipt was as follows:

"Received of Paul McKinstry five hundred and fifty bushels of No. 1 hard wheat, at his risk in case of fire, and free of storage until sold.

Winnebago City Mill Co."

Judge Dillon held that "*prima facie* the receipt issued is one for storage." But even in that case he decided that parol evidence was admissible to show the character of the transaction. Upon its face it was a receipt for storage, while the paper in question upon its face contemplates shipment and not storage.

We are all agreed, except Sherwood, J., absent, that the judgment of the court of appeals should be and it is accordingly reversed.